**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MID-CENTURY INSURANCE COMPANY, as subrogee :    CIVIL ACTION
of TACA, INC. d/b/a THE RED SOMBRERO,    :
6301 Owensmouth Avenue    :    NO. _____
Woodland Hills, California 91367    :
   :
       Plaintiff,    :
   :
   :    **JURY TRIAL DEMANDED**
     v.    :
   :
WM. P. MCGOVERN INC.,    :
doing business as McGovern Waste Disposal &    :
Septic Removal and McGovern Environmental    :
920 S. Bolmar Street    :
West Chester, Pennsylvania 19385    :
   :
and    :
   :
MCGOVERN ENVIRONMENTAL, LLC,    :
doing business as McGovern Environmental    :
920 S. Bolmar Street    :
West Chester, Pennsylvania 19385    :
   :
and    :
   :
QUALITY FIRE PROTECTION SERVICES, INC.    :
206 Glenshane Pass    :
New Castle, DE 19701    :
   :
and    :

QUALITY RESTAURANT SERVICES, INC.
7 Basin Road
North East MD 21901
and
206 Glenshane Pass
New Castle, DE 19701

and

EDWARD DEVINCENTIS
56 Delwood Road
Cherry Hill, New Jersey 08002

and

EDWARD DEVINCENTIS t/a C.A.R.E. REPAIR L.L.C.
56 Delwood Road
Cherry Hill, New Jersey 08002

Defendants.

---

## COMPLAINT

NOW COMES the above-named Plaintiff, Mid-Century Insurance Company, as subrogee of Taca Inc. doing business as The Red Sombrero, by and through undersigned counsel, and for its Complaint sets forth its causes of action against the above-named Defendants, as follows:

## PARTIES

1.      Plaintiff, Mid-Century Insurance Company (hereinafter "Mid-Century"), is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Woodland Hills, California.

2.      Mid-Century, is an insurance company issuing insurance, and has transacted business in Pennsylvania.

3.      Taca, Inc. is a Pennsylvania business entity doing business as The Red Sombrero (hereinafter "Taca"), operating a restaurant located at 879 E. Baltimore Pike, Kennett Square, Chester County, Pennsylvania ("Premises").

4.      Defendant Wm. P. McGovern Inc. doing business as McGovern Waste Disposal & Septic Removal and McGovern Environmental ("Defendant Wm. McGovern"), was at all times relevant  a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its sole principal place of business located at 920 S. Bolmar Street, West Chester, Pennsylvania 19385, providing waste disposal and cleaning services for both residential and commercial properties, among other things.

5.      Defendant McGovern Environmental, LLC doing business as McGovern Environmental ("Defendant McGovern Environmental") was at all relevant times upon information and belief, a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 920 S. Bolmar Street, West Chester, Pennsylvania 19385, providing waste disposal and cleaning services for both residential and commercial properties, among other things.

6.      Defendant Wm. McGovern and Defendant McGovern Environmental are collectively referred to herein as the "McGovern Defendants."

7.      At all times relevant hereto, the McGovern Defendants acted by and through their respective agents, servants, employees, workmen, contractors, subcontractors, and/or representatives, each of whom acted within the course and scope of their respective agency, employment, or authority.

8.      Defendant Quality Fire Protection Services, Inc. ("Defendant Quality Fire") was at all relevant times, upon information and belief, a domestic business corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 206 Glenshane Pass, New Castle, DE 19701, engaged in the inspection, maintenance, and servicing of commercial fire suppression systems, among other things.

9.      Defendant Quality Restaurant Services, Inc. ("Defendant Quality Restaurant") is, and at all relevant times was, upon information and belief, a foreign business corporation organized and existing under the laws of the State of Maryland with its principal place of business located at 7 Basin Road, North East MD 21901 and a registered agent located at 206 Glenshane Pass, New Castle, DE 19701 engaged in the inspection, maintenance, and servicing of commercial fire suppression systems, among other things.

10. Defendant Quality Fire and Defendant Quality Restaurant are collectively referred to herein as the "Quality Defendants."

11. Upon information and belief, Quality Defendants regularly conducted business in Pennsylvania, and more specifically conducted work at the Premises.

12. At all times relevant hereto, the Quality Defendants acted by and through their respective agents, servants, employees, workmen, contractors, subcontractors, and/or representatives, each of whom acted within the course and scope of their respective agency, employment, or authority.

13. Defendant Edward Devincentis ("Defendant Devincentis") is an adult individual conducting business in Pennsylvania and domiciled in New Jersey, who upon information and belief was engaged in the business of commercial kitchen appliance and equipment repair including but not limited to repair, maintenance, HVAC, hood, exhaust, ventilation, and/or related commercial kitchen services prior to May 28, 2024.

14. Defendant Edward Devincentis trading as C.A.R.E. Repair L.L.C. ("Defendant C.A.R.E.") was at all relevant times, upon information and belief, a trade name, sole proprietorship, business operation, and/or business, limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business located at 56 Delwood Road, Cherry Hill, New Jersey 08002, through which Defendant DeVincentis performed repair, maintenance, HVAC, hood, exhaust, ventilation, and/or related commercial kitchen services. Its business address is 56 Delwood Road, Cherry Hill, New Jersey 08002.

15. Defendant Devincentis and Defendant C.A.R.E. are collectively referred to herein as the "Devincentis Defendants".

16.    At all times relevant hereto, Devincentis Defendants held itself out as having the requisite knowledge and expertise to inspect, repair, and maintain commercial kitchen components, including but not limited to commercial gas stoves.

17.    At all times relevant hereto, Devincentis Defendants acted individually and/or by and through its agents, servants, employees, workmen, contractors, subcontractors, and/or representatives, each of whom acted within the course and scope of their respective agency, employment, or authority.

**JURISDICTION AND VENUE**

18.    This litigation arises out of a fire causing significant damage to the real and personal property of Taca that occurred on or about May 28, 2024, at the premises located at 823–883 E. Baltimore Pike, Kennett Square, Pennsylvania 19348, which damage was covered under Mid-Century's policy of insurance in excess of $481,774.68.

19.    The Court has personal jurisdiction over the parties because all parties routinely conducted business in Pennsylvania and performed and/or undertook services in Pennsylvania that give rise to this action.

20.    Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1), as complete diversity of citizenship exists between and amongst the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within the geographical boundaries of the Eastern District of Pennsylvania.

22.    This action is related to the action captioned Zurich American Insurance Company v. Wm. P. McGovern Inc., et al., Civil Action No. 2:26-cv-02234-GAW, which arises out of the same May 28, 2024, fire loss at or near the Premises.

**STATEMENT OF FACTS**

23.    Plaintiff, Mid-Century Insurance Company, as subrogee of Taca Inc. doing business as The Red Sombrero hereby incorporates all previous paragraphs as though stated at length herein.

24.    At all times relevant hereto, Taca operated The Red Sombrero restaurant in the Tenant Unit at the Premises.

25.    Mid-Century issued a commercial insurance policy to Taca having policy number 60673-09-80 and effective dates of February 17, 2024 – February 17, 2025, which provided coverage against loss and damages as a result of fire and other casualty events including, but not limited to, damage to real and personal property, equipment, and related losses, costs and expenses, incurred as a result of fire and other casualty events, including all aforesaid losses and damages as a result of the fire which forms the basis of this action

26.    The Red Sombrero restaurant leased and occupied one of tenant spaces at the subject Premises.

27.    On May 28, 2024, a fire occurred at the Premises, beginning in the kitchen area of The Red Sombrero restaurant (the "Fire").

28.    Prior to the Fire, Devincentis Defendants completed work to the cooking equipment in the Premises, specifically altering, changing, or otherwise conducting maintenance to the stove knobs and associated equipment.

29.    Investigation showed the Fire originated in the rear kitchen area of the Premises, in the vicinity of a natural gas range and related cooking equipment.

30.     On or about the evening of May 27, 2024, and/or during the early morning hours of May 28, 2024, the McGovern Defendants performed waste disposal, grease trap cleaning, and/or related cleaning services in the Premises for Taca.

31.     Upon information and belief, the McGovern Defendants performed those services by and through their agents, servants, employees, workmen, contractors, subcontractors, and/or representatives, who acted within the course and scope of their employment, agency, or authority.

32.     Investigation revealed that, at approximately 6:15 a.m. on May 28, 2024, an individual working on behalf of McGovern Defendants entered the restaurant using a key and performed grease trap cleaning operations.

33.     During the performance of the grease trap cleaning operations, equipment and materials were moved within the kitchen area, including stainless steel tables and plastic cutting boards.

34.     Following the Fire, plastic cutting boards were found melted on top of the range in the kitchen area.

35.     The Fire occurred as a result of the combustion of materials and debris, including plastic cutting boards, that were placed, moved, left, or otherwise permitted to remain on or near kitchen cooking equipment, including the natural gas range.

36.     Upon information and belief, the Fire was also caused by improper work by Devincentis Defendants as the knobs and work to the commercial gas stove was improper because the stove could be ignited just from brushing against it, as opposed to needing to intentionally light it.

37. Upon information and belief, the Premises was equipped with a commercial kitchen hood fire suppression system and related components intended to detect, suppress, and extinguish fires involving the kitchen cooking equipment.

38. Upon information and belief, the kitchen hood fire suppression system and related components included fusible links, manual activation mechanisms, automatic discharge mechanisms, agent cylinders, nozzles, and automatic fuel or gas shutoff mechanisms.

39. On or before May 27, 2024, Quality Defendants had previously inspected, serviced, installed, and/or maintained the kitchen fire suppression system at the Premises.

40. Upon information and belief, and based upon investigation, the kitchen hood fire suppression system failed to discharge and failed to shut off the gas supply.

41. Upon information and belief, and based upon investigation, the kitchen hood fire suppression system failed to properly activate and/or failed to extinguish the Fire as it began on top of or near the range.

42. Upon information and belief, Quality Defendants were responsible for performing its work in a reasonable, safe, workmanlike, and code-compliant manner, including identifying, correcting, and/or reporting any deficiencies affecting the operability of the kitchen hood, fire suppression, and/or fuel shutoff systems.

43. The Fire caused extensive damage to the Premises and to Taca's business operations, including but not limited to damage to building components, tenant improvements and betterments, kitchen equipment, flooring, interior finishes, business personal property, inventory, signage, and other property, together with business interruption and related losses.

44. All or part of the losses and damages sustained by Taca were covered under the policy of insurance issued by Mid-Century.

45. Pursuant to the terms and conditions of the policy of insurance, Mid-Century paid amounts to or on behalf of Taca for covered damages, losses, costs, and expenses stemming from the Fire, including amounts totaling at least $481,774.68.

46. By virtue of those payments, and pursuant to the policy of insurance and by operation of law, Mid-Century is subrogated to the rights and remedies of Taca with respect to the damages, losses, costs, and expenses paid by Mid-Century.

## COUNT I – NEGLIGENCE
### *(Against WM. P. McGovern Inc. and McGovern Environmental, LLC)*

47. Plaintiff Mid-Century Insurance Company, as subrogee of Taca Inc. doing business as The Red Sombrero incorporates the allegations in paragraphs 1–46 above as though same are fully set forth at length herein.

48. At all times relevant and material hereto, McGovern Defendants held itself out as having the requisite knowledge and expertise in waste disposal and cleaning services, including without limitation grease trap cleaning services, and undertook a duty to perform said services in a safe and workmanlike manner consistent with all appropriate standards, rules, practices, and codes.

49. McGovern Defendants owed a duty to Taca, and Mid-Century, by way of subrogation, while present at and performing work in the Premises, to exercise reasonable care in performing their respective services, including a duty to avoid creating an unreasonable risk of fire.

50. McGovern Defendants breached their duties in several ways including, but not limited to:

   a. Failing to act in a safe and prudent manner while at the Premises;

   b. Failing to act in a safe and prudent manner so as to avoid causing the Fire;

c.  Failing to perform grease trap disposal and cleaning services in a safe and proper manner at the Premises;

d.  Failing to have and utilize a proper receptacle for materials and debris;

e.  Failing to move and locate items in a safe and appropriate location within the Premises;

f.  Placing, moving, leaving, and/or permitting combustible materials or debris to remain on or near active burners, a stovetop, or other kitchen cooking equipment;

g.  Failing to verify that the natural gas range burners and other kitchen cooking equipment were in the off position;

h.  Failing to act properly regarding the care, control, and discard of materials and debris that it knew or should have known created an unreasonable risk of fire;

i.  Failing to establish and enforce proper fire safety measures at the Premises during waste disposal and cleaning operations;

j.  Failing to remove from the Premises materials and debris that were a fire hazard;

k.  Failing to properly train, supervise, and oversee its agents, servants, employees, workmen, contractors, subcontractors, and/or representatives regarding the proper means and methods related to fire hazards;

l.  Failing to assess the risks and/or analyze the hazards of leaving materials and debris in proximity to a heat source inside the Premises;

m.  Failing to hire agents, servants, employees, workmen, contractors, subcontractors, and/or representatives who were appropriately educated, trained, and skilled with respect to fire safety during their work at the Premises;

n.  Failing to follow the applicable codes, standards, rules, and practices for safe waste disposal and cleaning services at the Premises;

o.  Failing to keep materials subject to ignition off of the stovetop and kitchen cooking equipment at the Premises;

p.  Failing to exercise reasonable care to ensure that their actions did not create an unreasonable risk of fire at the Premises; and

q.  In other ways as yet unknown and to be learned in the course of discovery.

51.  McGovern Defendants' acts, omissions and breaches of duty occurred at all relevant times in the course and scope of his employment with and for McGovern Defendants and therefore are imputed to McGovern Defendants.

52.  Each of the above-referenced acts or omissions, separately or in combination with others, constitutes negligence on the part of McGovern Defendants and was a direct and proximate cause of the Fire and the resulting damages, losses, costs, and expenses suffered by Taca and paid by Mid-Century.

53.  As a direct and proximate result of McGovern Defendants actions and/or omissions, Mid-Century's insured, Taca sustained damages in excess of $481,774.68, for which Mid-Century indemnified Taca, and to which all rights of recovery Mid-Century is subrogated.

WHEREFORE, Plaintiff Mid-Century Insurance Company, as subrogee of Taca, Inc. d/b/a The Red Sombrero, demands judgment in its favor and against Defendants jointly and severally, in an amount in excess of FOUR HUNDRED EIGHTY-ONE THOUSAND SEVEN HUNDRED SEVENTY-FOUR DOLLARS AND SIXTY-EIGHT CENTS ($481,774.68), plus interest and costs of this action, and such other and further relief as the Court deems just and proper.

**COUNT II – NEGLIGENCE**
***(Against Quality Restaurant Services, Inc. and Quality Fire Protection Services)***

54.     Plaintiff Mid-Century Insurance Company, as subrogee of Taca Inc. doing business as The Red Sombrero incorporates the allegations in paragraphs 1 – 46 above as though same are fully set forth at length herein.

55.     At all times relevant and material hereto, Quality Defendants held itself out as having the requisite knowledge and expertise to inspect, service, maintain, repair, test, and/or install commercial kitchen fire suppression systems, and undertook a duty to perform said services in a safe and workmanlike manner consistent with all appropriate standards, rules, practices, and codes.

56.     Quality Defendants owed a duty to Taca, and Mid-Century by way of subrogation, while present at and performing work in the Premises, to exercise reasonable care in performing their respective services, including a duty to avoid creating an unreasonable risk.

57.     Quality Defendants breached their duties in several ways including, but not limited to:

 a. Failing to properly inspect, service, maintain, repair, test, and/or install the kitchen fire suppression system;

 b. Failing to ensure that the fire suppression system was operational and code compliant;

 c. Failing to ensure proper operation of fusible links, nozzles, discharge mechanisms, manual activation systems, and automatic activation components;

 d. Failing to ensure that the system would discharge suppression agent in the event of a fire;

 e. Failing to ensure proper operation of the automatic gas shutoff mechanism;

f.  Failing to identify, document, report, and correct deficiencies in the suppression system;

g.  Failing to warn Taca of unsafe or deficient conditions;

h.  Failing to properly train, supervise, monitor, and retain employees, agents, servants, representatives, and/or contractors performing suppression system work;

i.  Failing to comply with applicable codes, standards, manufacturer requirements, industry practices, and fire safety requirements applicable to commercial kitchen fire suppression systems;

j.  Failing to perform all work in a safe and workmanlike manner;

k.  Failing to prevent an unreasonable risk of fire spread at the Subject Premises; and

l.  Otherwise acting negligently and carelessly in other ways as yet unknown and to be learned in the course of discovery.

58.  Each of the above-referenced acts or omissions, separately or in combination with others, constitutes negligence on the part of Quality Defendants and was a direct and proximate cause of the Fire and the resulting damages, losses, costs, and expenses suffered by Taca and paid by Mid-Century.

59.  As a direct and proximate result of Quality Defendants actions and/or omissions, Mid-Century's insured Taca sustained damages in excess of $481,774.68, for which Mid-Century indemnified Taca, and to which all rights of recovery Mid-Century is subrogated.

WHEREFORE, Plaintiff Mid-Century Insurance Company, as subrogee of Taca, Inc. d/b/a The Red Sombrero, demands judgment in its favor and against Defendants jointly and severally, in an amount in excess of FOUR HUNDRED EIGHTY-ONE THOUSAND SEVEN HUNDRED

SEVENTY-FOUR DOLLARS AND SIXTY-EIGHT CENTS ($481,774.68), plus interest and costs of this action, and such other and further relief as the Court deems just and proper.

**COUNT III – NEGLIGENCE**
***(Against Edward DeVincentis and Edward DeVincentis t/a C.A.R.E. Repair L.L.C.)***

60.    Plaintiff incorporates the allegations in paragraphs 1 – 46 above as though same are fully set forth at length herein.

61.    At all times relevant and material hereto, Devincentis Defendants held itself out as having the requisite knowledge and expertise in to perform repair, and/or maintain, commercial cooking equipment in a safe and workmanlike manner consistent with all appropriate standards, rules, practices, and codes.

62.    Devincentis Defendants owed a duty to Taca, and Mid-Century, by way of subrogation, while present at and performing work in the Premises and on the existing kitchen equipment, to exercise reasonable care in performing their respective services, including a duty to avoid creating an unreasonable risk.

63.    Devincentis Defendants breached its duties in several ways including, but not limited to:

    a.    Failing to act in a safe and prudent manner while at the Premises;

    b.    Failing to use proper equipment when maintaining, repairing or otherwise working on the cooking equipment in the kitchen at the Premises;

    c.    Failing to complete proper and full testing of the subject work completed to ensure same was functioning properly;

    d.    Failing to ensure the gas control knobs functioned in a safe and reasonable way on the commercial cooking equipment at the Premises;

e.  Failing to properly reinstall the equipment on the cooking equipment at the Premises;

f.  Failing to act properly regarding the care, control, and discard of materials and debris that it knew or should have known created an unreasonable risk of fire;

g.  Failing to properly train, supervise, and oversee its agents, servants, employees, workmen, contractors, subcontractors, and/or representatives regarding the proper means and methods related to fire hazards;

h.  Failing to follow the applicable codes, standards, rules, and practices for services at the Premises;

i.  Failing to exercise reasonable care to ensure that their actions did not create an unreasonable risk of fire at the Premises; and

j.  In other ways as yet unknown and to be learned in the course of discovery.

64.   Each of the above-referenced acts or omissions, separately or in combination with others, constitutes negligence on the part of Devincentis Defendants and was a direct and proximate cause of the Fire and the resulting damages, losses, costs, and expenses suffered by Taca and paid by Mid-Century.

65.   As a direct and proximate result of Devincentis Defendants actions and/or omissions, Taca sustained damages in excess of $481,774.68, for which Mid-Century indemnified Taca, and to which all rights of recovery Plaintiff Mid-Century is subrogated.

WHEREFORE, Plaintiff Mid-Century Insurance Company, as subrogee of Taca, Inc. d/b/a The Red Sombrero, demands judgment in its favor and against Defendants jointly and severally, in an amount in excess of FOUR HUNDRED EIGHTY-ONE THOUSAND SEVEN HUNDRED

SEVENTY-FOUR DOLLARS AND SIXTY-EIGHT CENTS ($481,774.68), plus interest and costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT V – BREACH OF CONTRACT
### *(Against Quality Restaurant Services, Inc. and Quality Fire Protection Services)*

66.    Plaintiff incorporates the allegations in paragraphs 1 – 46 above as though same are fully set forth at length herein.

67.    Upon information and belief, Taca entered into an agreement, service relationship, work order, invoice arrangement, or contract with Quality Defendant for the inspection, service, maintenance, repair, testing, and/or installation of the commercial kitchen hood fire suppression system at the Premises.

68.    Pursuant to the agreement and/or service relationship, Quality Defendant was required to perform its work in a safe, proper, code-compliant, and workmanlike manner and to ensure that the fire suppression system was properly inspected, maintained, serviced, tested, and/or operational.

69.    Quality Defendant breached its contractual and/or service obligations by failing to properly inspect, service, maintain, repair, test, and/or ensure the operability of the commercial kitchen fire suppression system.

70.    Quality Defendant further breached its obligations by failing to ensure that the suppression system would activate, discharge, suppress a fire, and shut off the gas supply as intended.

71.    Quality Defendant's breaches were a direct and proximate cause of the fire spread, suppression failure, and resulting damages.

72.    As a result of Quality Defendant's breaches, Taca sustained damages for which Mid-Century made payments and to which claims Mid-Century is subrogated.

73.    As a direct and proximate result of Quality Defendant's breach of contract, Taca sustained damages in excess of $481,774.68, for which Mid-Century indemnified Taca, and to which all rights of recovery Mid-Century is subrogated.

WHEREFORE, Plaintiff Mid-Century Insurance Company, as subrogee of Taca, Inc. d/b/a The Red Sombrero, demands judgment in its favor and against Defendants jointly and severally, in an amount in excess of FOUR HUNDRED EIGHTY-ONE THOUSAND SEVEN HUNDRED SEVENTY-FOUR DOLLARS AND SIXTY-EIGHT CENTS ($481,774.68), plus interest and costs of this action, and such other and further relief as the Court deems just and proper.

Dated: May 21, 2026
      New York, New York

Respectfully submitted,

DERREVERE STEVENS BLACK & COZAD

*Joseph C. Bevis, III*

_____
By: Joseph C. Bevis, Esq.
Marc P. Madonia, Esq.
270 Madison Avenue, Suite 1403
New York, NY 10016
Telephone: (212) 671-8313
Facsimile: (561) 640-3050
jcb@derreverelaw.com
mpm@derreverelaw.com